FILED
2009 JAN 28 AM 9:19
U.S. DISTRICT COURT
MIDDLE DISTRICT OF TN

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | : |
| Plaintiff, | : |
| v. | : Civil Action No. 3 09 0087 |
| GORDON B. GRIGG and PROTRUST MANAGEMENT, INC. d/b/a PROTRUST MANAGEMENT GROUP, LLC d/b/a PROTRUST MANAGEMENT GROUP, INC. d/b/a PROTRUST MANAGEMENT GROUP, INC. LLC d/b/a PROTRUST CORPORATION, | : JUDGE HAYNES |
| Defendants. | : |

## COMPLAINT FOR EMERGENCY INJUNCTIVE AND OTHER RELIEF

Plaintiff, Securities and Exchange Commission ("Commission"), alleges that:

### OVERVIEW

1. From approximately late summer of 2007 to the present, Gordon B. Grigg ("Grigg"), a purported financial planner and an investment adviser, and an entity that he controls, ProTrust Management, Inc. d/b/a ProTrust Management

Group, LLC, d/b/a ProTrust Management Group, Inc., d/b/a ProTrust Management Group, Inc. LLC, d/b/a ProTrust Corporation (collectively, "ProTrust Management") have engaged in a scheme to defraud two clients out of approximately $332,000 by obtaining such funds from them and claiming to have invested them in securities that do not exist. In addition, on information and belief, from approximately 2003 to the present, Defendants have engaged in a scheme to defraud an additional 25 clients out of approximately $6.2 million by obtaining such funds from them and claiming to have invested them in securities that do not exist.

2. As part of the scheme, Defendants have: (1) obtained control over client funds and falsely claimed to have invested such funds in fictitious securities that Defendants have described as "Private Placements;" (2) created false and fraudulent account statements reflecting the clients' ownership of non-existent securities; (3) falsely claimed that Defendants had the ability to invest client funds in government-guaranteed commercial paper and bank debt as part of the U.S. government's Troubled Asset Relief Program ("TARP") and falsely claimed that they did invest client funds in the TARP program; and (4) falsely claimed to have partnerships and other business relationships with several of the nation's top investment firms.

3. Through their conduct, Defendants have engaged, and unless restrained and enjoined by this Court, will continue to engage in acts and practices that constitute and will constitute violations of Section 17(a) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. § 77q(a)], Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5], and Sections 206(1) and 206(2) of the Investment Advisers Act of 1940 ("Advisers Act") [15 U.S.C. §§ 80b-6(1) and 80b-6(2)].

## JURISDICTION AND VENUE

4. The Commission brings this action pursuant to Sections 20 and 22 of the Securities Act [15 U.S.C. §§ 77t and 77v], Sections 21(d) and 21(e) of the Exchange Act [15 U.S.C. §§ 78u(d) and 78u(e)] and Sections 209 and 214 of the Advisers Act [15 U.S.C. §§ 80b-9 and 80b-14], to enjoin the Defendants from engaging in the transactions, acts, practices, and courses of business alleged in this complaint, and transactions, acts, practices, and courses of business of similar purport and object, for civil penalties and for other equitable relief.

5. This Court has jurisdiction over this action pursuant to Section 22 of the Securities Act [15 U.S.C. §§ 77t], Sections 21(d), 21(e), and 27 of the

Exchange Act [15 U.S.C. §§ 78u(d), 78u(e), and 78aa] and Section 214 of the Advisers Act [15 U.S.C. § 80b-14].

6. Defendants, directly and indirectly, made use of the mails, the means and instruments of transportation and communication in interstate commerce and the means and instrumentalities of interstate commerce in connection with the transactions, acts, practices, and courses of business alleged in this complaint.

7. Certain of the transactions, acts, practices, and courses of business constituting violations of the Securities Act, the Exchange Act and the Advisers Act occurred in the Middle District of Tennessee. Defendants, who are residents of the Middle District of Tennessee and maintain offices therein, have solicited investments from and sold interests in their fictitious securities to residents of the Middle District of Tennessee.

8. Defendants, unless restrained and enjoined by this Court, will continue to engage in the transactions, acts, practices, and courses of business alleged in this complaint, and in transactions, acts, practices, and courses of business of similar purport and object.

## DEFENDANTS

**9. <u>Gordon B. Grigg</u>**, upon information and belief, is 46 years of age, and

resides in Franklin, Tennessee. Grigg holds himself to be a financial planner. Grigg is not currently licensed by or registered with any state or federal agency to offer or sell securities, to be registered with any broker-dealer, or to be associated with any investment adviser.

10. **ProTrust Management, Inc.**, is a Tennessee corporation organized in May of 2000. Grigg controls ProTrust Management.

11. In June 2006, Defendants were the subject of a cease-and-desist order by the North Dakota Securities Department for fraudulently selling non-existent securities to one of their clients. From 1989 through 2002, Grigg was a registered representative with various broker-dealers registered with the Commission; he was, however, discharged in 2002 for multiple compliance violations.

12. At all times relevant to this Complaint, Defendants have acted as investment advisers in that, for compensation, they engaged in the business of advising others as to the advisability of investing in, purchasing, and selling securities.

## FACTS

13. ProTrust Management is the principal entity through which Grigg currently operates. Defendants' fraudulent scheme involves the offer and sale to clients of fictitious securities that they purport to be "Private Placements."

-5-

Defendants have falsely and fraudulently represented to their clients that the "Private Placements" are safe investments which have fixed annual returns and defined investment horizons. Defendants provide periodic account statements to clients falsely and fraudulently listing the purported Private Placements in which Defendants claim to have invested the clients' funds, fictitious account balances, and fictitious accrued income figures.

14. Shortly before the non-existent Private Placements were scheduled to mature, Defendants attempted to convince clients to renew or "roll over" their existing Private Placements into further fictitious Private Placements in order to avoid redemption requests from clients.

15. Upon information and belief, from approximately 2003 to the present, Defendants have offered and sold approximately $6.5 million of fictitious securities to clients.

### The NC Client and the CA Client

16. In August 2007, Grigg recommended that a client in North Carolina (the "NC Client") and a client in California (the "CA Client"), each of whom was a retired U.S. Air Force pilot, invest with Defendants in so-called "Private Placements." Grigg falsely and fraudulently told the NC Client and the CA Client that these "Private Placements" were not available to individual investors but were

-6-

available to the Defendants' clients through the pooling of their funds. Based on Grigg's representations, the NC Client and the CA Client wired $237,000 and $100,000 in cash, respectively, to the Defendants.

17. From approximately January 2008 through December 2008, Defendants provided false and fraudulent monthly account statements to the NC Client stating that the NC Client owned two "Private Placements:" (1) a $100,000 "Jumbo Corporate Debenture" with an 8.15% fixed annual return purportedly purchased on August 15, 2007 and maturing on December 22, 2008; and (2) a $132,000 "Kohlberg Kravis Roberts" investment product with a 14.00% fixed annual return purportedly purchased on August 28, 2007 and maturing on April 30, 2009. In fact, no such investment products had been purchased by Defendants on the NC Client's behalf, and no such Kohlberg Kravis Roberts investment product exists. The account statements contained false and fraudulent balances purporting to reflect the amount of accrued income earned by the NC Client from the purported investments.

18. From approximately August 2007 through December 2008, Defendants provided false and fraudulent monthly account statements to the CA Client stating that the CA Client owned a $100,000 "Kohlberg Kravis Roberts" Private Placement investment product with a 14.00% fixed annual return

purportedly purchased on August 28, 2007 and maturing on April 30, 2009. In fact, no such Kohlberg Kravis Roberts investment product exists. The account statements contained false and fraudulent balances purporting to reflect the amount of accrued income earned by the CA Client from the purported investment.

19. In mid-December 2008, Defendants falsely and fraudulently claimed in correspondence sent separately to the NC Client and the CA Client through the U.S. mails that ProTrust Management had access to debt guaranteed by the U.S. government through the government's TARP program (the "TARP Correspondence"). In addition, Grigg falsely and fraudulently claimed in the TARP Correspondence that Defendants contributed the value of the NC Client's and the CA Client's purported "Private Placement" investments to the purported TARP fund.

20. Specifically, Defendants falsely and fraudulently stated in the TARP Correspondence:

> ProTrust Management has been a very small participant in a partnership that is headed up by Berkshire Hathaway and Kohlberg Kravis and Roberts or KKR. Via the partnership, ProTrust has purchased over 8 million dollars worth of banking debt and commercial bank paper over the last 5 years with interest rates from 7.5% to 14%. ProTrust was offered to participate in the latest offerings with Morgan Stanley and Goldman Sacks [sic] through investments and loans. The result is: I agreed with the partnerships and committed to over $5 million dollars of commercial paper

-8-

offering 12.5% in government guaranteed commercial paper and bank debt. I have contributed all of your private placement account value into the TARP guaranteed fund paying your account 12% for the term of the paper..... This is an amazing opportunity as we now have a US government guaranteed 12.5% bank debt. If you do not want to participate in the 12.5% government guaranteed fund please send me the enclosed liquidation form.....

21. Defendants also separately provided the NC Client and the CA Client false and fraudulent documents purporting to be copies of the investment contract for the TARP program (the "TARP Contract"), and which contained a CUSIP number and purported to be executed by "Morgan Stanley Bancorp."

22. The statements in the TARP Correspondence regarding partnerships and/or relationships between Defendants, on the one hand, and Berkshire Hathaway, Goldman Sachs and Morgan Stanley, on the other, are false and fraudulent. Moreover, "Morgan Stanley Bancorp," a purported entity referenced in the TARP Contract, does not exist, and the CUSIP number provided in the TARP Contract is fictitious.

## Additional Clients

23. Upon information and belief, from approximately 2003 to the present, Defendants have offered and sold fictitious investments identical or similar to the "Private Placements" that Defendants purportedly purchased on behalf of the NC Client and the CA Client and the investments referenced in the TARP

-9-

Correspondence and the TARP Contract to a total of approximately 27 investors, and have thereby defrauded these individuals out of approximately $6.5 million.

24. Defendants failed to disclose to the NC Client, the CA Client, and, on information and belief, to any of the Defendants' other clients, when Defendants became the investment adviser for these clients or at any subsequent time: (a) that Defendants were the subject of an administrative cease-and-desist order issued by the North Dakota Securities Department on June 28, 2006 which ordered them to pay restitution and a civil penalty of $570,000 for falsely representing to a client that her funds had been invested in certificates of deposit and other securities, and which found that they had violated the registration and antifraud provisions of the North Dakota securities laws; and/or (b) that Grigg was terminated for cause as a registered representative of a broker-dealer registered with the Commission on April 25, 2002 for multiple compliance violations.

## COUNT I—FRAUD

### Violations of Section 17(a)(1) of the Securities Act
### [15 U.S.C. § 77q(a)(1)]

25. Paragraphs 1 through 24 are hereby realleged and are incorporated herein by reference.

26. From in or around late summer 2007 to the present, and, on information and belief from approximately 2003 to the present, Defendants, in the offer and sale of the securities described herein, by the use of means and instruments of transportation and communication in interstate commerce and by use of the mails, directly and indirectly, employed devices, schemes and artifices to defraud purchasers of such securities, all as more particularly described above.

27. Defendants knowingly, intentionally, and/or recklessly engaged in the aforementioned devices, schemes and artifices to defraud.

28. While engaging in the course of conduct described above, the Defendants acted with scienter, that is, with an intent to deceive, manipulate or defraud or with a severe reckless disregard for the truth.

29. By reason of the foregoing, the Defendants, directly and indirectly, have violated and, unless enjoined, will continue to violate Section 17(a)(1) of the Securities Act [15 U.S.C. § 77q(a)(1)].

## COUNT II—FRAUD

### Violations of Sections 17(a)(2) and 17(a)(3) of the Securities Act [15 U.S.C. §§ 77q(a)(2) and 77q(a)(3)]

30. Paragraphs 1 through 24 are hereby realleged and are incorporated herein by reference.

31. From in or around late summer 2007 to the present, and, on information and belief from approximately 2003 to the present, Defendants, in the offer and sale of the securities described herein, by use of means and instruments of transportation and communication in interstate commerce and by use of the mails, directly and indirectly:

    a. obtained money and property by means of untrue statements of material fact and omissions to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and

    b. engaged in transactions, practices and courses of business which would and did operate as a fraud and deceit upon the purchasers of such securities, all as more particularly described above.

32. By reason of the foregoing, Defendants, directly and indirectly, have violated and, unless enjoined, will continue to violate Sections 17(a)(2) and 17(a)(3) of the Securities Act [15 U.S.C. §§ 77q(a)(2) and 77q(a)(3)].

## COUNT III—FRAUD

**Violations of Section 10(b) of the Exchange Act and Rule 10b-5 thereunder
[15 U.S.C. § 78j(b), 17 C.F.R. § 240.10b-5]**

33. Paragraphs 1 through 24 are hereby realleged and are incorporated herein by reference.

34. From in or around late summer 2007 to the present, and, on information and belief from approximately 2003 to the present, Defendants, in connection with the purchase and sale of securities described herein, by the use of the means and instrumentalities of interstate commerce and by use of the mails, directly and indirectly:

    a. employed devices, schemes, and artifices to defraud;

    b. made untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and

    c. engaged in acts, practices, and courses of business which would and did operate as a fraud and deceit upon the purchasers of such securities,

all as more particularly described above.

35. Defendants knowingly, intentionally, and/or recklessly engaged in the aforementioned devices, schemes and artifices to defraud, made untrue statements of material facts and omitted to state material facts, and engaged in fraudulent acts, practices and courses of business. In engaging in such conduct, the defendants acted

-13-

with scienter, that is, with an intent to deceive, manipulate or defraud or with a severe reckless disregard for the truth.

36. By reason of the foregoing, Defendants, directly and indirectly, have violated and, unless enjoined, will continue to violate Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

## COUNT IV—FRAUD

### Violations of Section 206(1) of the Advisers Act
### [15 U.S.C. § 80b-6(1)]

37. Paragraphs 1 through 24 are hereby realleged and are incorporated herein by reference.

38. From in or around late summer 2007 to the present, and, on information and belief from approximately 2003 to the present, Defendants, acting as investment advisers, using the mails and the means and instrumentalities of interstate commerce, directly and indirectly, employed devices, schemes and artifices to defraud one or more advisory clients and/or prospective clients.

39. Defendants knowingly, intentionally, and/or recklessly engaged in the aforementioned devices, schemes and artifices to defraud. In engaging in such conduct, Defendants acted with scienter, that is, with intent to deceive, manipulate or defraud or with a severe reckless disregard for the truth.

-14-

40. By reason of the foregoing, Defendants, directly and indirectly, have violated, and unless enjoined, will continue to violate Section 206(1) of the Advisers Act [15 U.S.C. § 80b-6(1)].

## COUNT V—FRAUD

### Violations of Section 206(2) of the Advisers Act
### [15 U.S.C. § 80b-6(2)]

41. Paragraphs 1 through 24 are hereby realleged and are incorporated herein by reference.

42. From in or around late summer 2007 to the present, and, on information and belief from approximately 2003 to the present, acting as investment advisers, by the use of the mails and the means and instrumentalities of interstate commerce, directly and indirectly, engaged in transactions, practices, and courses of business which would and did operate as a fraud and deceit on one or more advisory clients and/or prospective clients.

43. By reason of the foregoing, Defendants, directly and indirectly, have violated and, unless enjoined, will continue to violate and aid and abet violations of Section 206(2) of the Advisers Act [15 U.S.C. § 80b-6(2)].

-15-

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Commission respectfully prays for:

### I.

Findings of Fact and Conclusions of Law pursuant to Rule 52 of the Federal Rules of Civil Procedure, finding that the Defendants named herein committed the violations alleged herein.

### II.

A temporary restraining order, preliminary and permanent injunctions enjoining the Defendants, their officers, agents, servants, employees, and attorneys, and those persons in active concert or participation with them who receive actual notice of the order of injunction, by personal service or otherwise, and each of them, from violating, directly or indirectly, Section 17(a) of the Securities Act [15 U.S.C. 77q(a)], Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 [17 C.F.R. 240.10b-5] promulgated thereunder, and enjoining Defendants from violating Sections 206(1) and 206(2) of the Advisers Act [15 U.S.C. 80b-6(1) and 80b-6(2)].

### III.

An order requiring an accounting of the use of proceeds of the sales of the securities described in this Complaint and the disgorgement by Defendants of all ill-

gotten gains or unjust enrichment with prejudgment interest, to effect the remedial purposes of the federal securities laws, an order freezing the assets and preserving documents of the Defendants, to preserve the status quo.

## IV.

An order pursuant to Section 20(d) of the Securities Act [15 U.S.C. 77t(d)], Section 21(d)(3) of the Exchange Act [15 U.S.C. 78u(d)(3)], and Section 209(e) of the Advisers Act [15 U.S.C. § 80b-9(e)] imposing civil penalties against the defendants.

## V.

Such other and further relief as this Court may deem just, equitable, and appropriate in connection with the enforcement of the federal securities laws and for the protection of investors.

Dated this ___th day of January, 2009.

Respectfully submitted,

*William P Hicks /rky by expressed permission*
William P. Hicks
Regional Trial Counsel
Georgia Bar No. 351649
E-mail: hicksw@sec.gov

*[signature]*

Robert K. Gordon
Senior Trial Counsel
Georgia Bar No. 302482
E-mail: gordonr@sec.gov

*[signature]*

Aaron W. Lipson
Senior Staff Attorney
Georgia Bar No. 453828
E-mail: lipsona@sec.gov

Counsel for Plaintiff:

Securities and Exchange Commission
Atlanta Regional Office
3475 Lenox Road, N.E., Suite 500
Atlanta, Georgia 30326-1232
Facsimile: (404)842-7679