FILED
U.S DISTRICT COURT
MIDDLE DISTRICT OF TENN.

JAN 2 8 2009

BY _____
DEPUTY CLERK

# DECLARATION OF T. MICHAEL ELROD

I, **T. MICHAEL ELROD**, declare pursuant to the provisions of 28 U.S.C. § 1746:

1. I have direct knowledge of the matters set forth in this declaration (the "Declaration").

2. I am 61 years old and currently reside in Encinitas, California.

3. I previously served as a fighter pilot in the U.S. Air Force and Navy and thereafter was employed as a commercial airline pilot. I have since retired.

4. In 2007, I was first introduced to Gordon Grigg through a mutual acquaintance. Over the next several months, Mr. Grigg and I discussed several possible investment opportunities.

5. Mr. Grigg also discussed with me his corporate entity, ProTrust Management, Inc. ("ProTrust Management"), and referred me to his and ProTrust Management's website: http://www.protrustmanagement.com/ (the "ProTrust Website").

6. I reviewed the ProTrust Website, which stated that, among other things, Mr. Grigg had "helped thousands of individuals and corporations achieve their financial goals." The ProTrust Website further stated Mr. Grigg would bring his "20 years of investment experience and share with you the winning strategies for creating wealth regardless of your income," and that "[i]f your finances are in trouble or you are unable to understand your current financial picture, we can get started immediately on your path to financial freedom." A true and correct copy of the ProTrust Website as it currently exists is attached hereto as <u>Exhibit 1</u>.

7. Based upon the investment opportunities that Mr. Grigg discussed with me as well as his professional investment experience as described on the ProTrust Website, I determined to invest with Mr. Grigg and ProTrust Management.

8. In August 2007, at Mr. Grigg's instruction, I opened a brokerage account at TD Ameritrade, Inc. (the "TD Ameritrade Account"). Further to Mr. Grigg's instruction, I rolled over my existing retirement accounts, containing approximately $386,000 in cash and marketable securities, into the TD Ameritrade Account.

9. Mr. Grigg also instructed that I execute a power of attorney, providing him with online discretionary trading authority over the TD Ameritrade Account, which I did. Mr. Grigg thereafter utilized this discretionary trading authority to purchase securities of his choosing.

10. Mr. Grigg also represented to me that he and ProTrust Management had access to what he referred to as "Private Placements." Mr. Grigg represented that to take advantage of these Private Placements, my investment funds would be combined with other investors' funds. Mr. Grigg further explained that these Private Placements were investment opportunities that smaller, individual investors such as myself would typically not have access to, but that Mr. Grigg and ProTrust Management, by combining my investment proceeds with other similar investors would be able to invest in on our behalf.

11. Based on Mr. Grigg's representations, in August 2007 I transferred approximately $100,000 in cash to Mr. Grigg and ProTrust Management to invest in a Private Placement as he had described it to me.

12. I thereafter began receiving account statements on the letterhead of "ProTrust Management Group, Inc." that represented I was invested in one such Private Placement. The Private Placement was identified as a $100,000 "Kohlberg Kravis Roberts" investment product with a 14.00% fixed annual return that was purchased on August 28, 2007 with a maturity date of April 30, 2009. The periodic account statements that I received identified this investment product and also provided an accrued income identification. A true and correct copy of such an account statement, dated September 30, 2008 (the "Account Statement"), is attached hereto as Exhibit 2.

13. The Account Statement specifically identified equity securities holdings in the TD Ameritrade Account controlled by Mr. Grigg and specifically represented that I owned 12,000 shares of an equity security identified as "Freddie Mae," with a cost basis of $13,856.

14. In mid-December 2008, Mr. Grigg sent correspondence to me via U.S. Mail on ProTrust Management Group, LLC letterhead, with a ProTrust Management Group, Inc. LLC signature block, discussing a new investment opportunity with me involving the federal government's Troubled Asset Recovery Program (the "TARP Correspondence").

15. Within the TARP Correspondence, Mr. Grigg and ProTrust Management indicated that they had access to debt guaranteed by the federal government. Mr. Grigg and ProTrust Management specifically stated within the TARP Correspondence that:

> **ProTrust Management has been a very small participant in a partnership that is headed up by Berkshire Hathaway and Kohlberg Kravis and Roberts or KKR. Via the partnership, ProTrust has purchased over 8 million dollars worth of banking debt and commercial bank paper over the last 5 years with interest rates from 7.5% to 14%. ProTrust was offered to participate in the latest offerings with Morgan Stanley and Goldman Sacks [sic] through investments and loans. The result is: I agreed with the partnerships and committed to over $5 million dollars of commercial paper offering 12.5% in government guaranteed commercial paper and bank debt. I have contributed all of your private placement account value into the TARP**

**guaranteed fund paying your account 12% for the term of the paper…. This is an amazing opportunity as we now have a US government guaranteed 12.5% bank debt. If you do not want to participate in the 12.5% government guaranteed fund please send me the enclosed liquidation form….**

A true and correct copy of the TARP Correspondence is attached hereto as <u>Exhibit 3</u>.

16. On December 13, 2008, Mr. Grigg also provided me with a copy of what he referred to as the "note" that he stated was the evidence of the guaranteed debt identified within the TARP Correspondence. The document that Mr. Grigg provided me that he referred to as the "note" appeared to be an enclosure letter from an entity identified as "Morgan Stanley Bancorp" referencing a series of senior subordinated notes (the "Morgan Stanley Bancorp Correspondence"). The Morgan Stanley Bancorp Correspondence also identified a "Private CUSIP Number 46261Q ABJ." A true and correct copy of the Morgan Stanley Bancorp Correspondence is attached hereto as <u>Exhibit 4</u>.

17. After reading the TARP Correspondence and the Morgan Stanley Bancorp Correspondence, and discussing these purported investment opportunities with other persons, I became suspicious of the representations that Mr. Grigg was making to me concerning my investments. I thereafter revoked Mr. Grigg's control over the TD Ameritrade Account, now valued at approximately $112,000, and demanded that Mr. Grigg and ProTrust Management liquidate my Private Placement and return all moneys to me immediately.

18. Mr. Grigg and ProTrust Management represented that they would liquidate my holdings and return all moneys to me by January 5, 2009, which did not occur.

19. Mr. Grigg and ProTrust Management thereafter represented that they would deliver a check to me on January 15, 2009 representing all funds due to me, which did not occur.

20. Mr. Grigg further represented to me that any involvement on my part with the U.S. Securities and Exchange Commission or the Federal Bureau of Investigation would result in the return of my investment proceeds being delayed.

21. To date I have delivered approximately $100,000 in cash to Mr. Grigg and ProTrust Management to invest on my behalf. Despite repeated requests on my part, I have received no return of the funds I invested directly with Mr. Grigg and ProTrust Management and that were represented to me were invested in a "Kohlberg Kravis Roberts" Private Placement.

Page 3 of 4

Case 3:09-cv-00087    Document 10    Filed 01/28/09    Page 3 of 4 PageID #: 75

22. In further researching Mr. Grigg, I located a copy of an administrative cease-and-desist order entered against him and ProTrust Management on June 28, 2006 by the State of North Dakota Securities Department (the "North Dakota C&D"). The North Dakota C&D found that Mr. Grigg and ProTrust Management violated the registration and antifraud provisions of North Dakota law and ordered them to pay restitution and a civil penalty of $570,000. Mr. Grigg did not inform me of the existence of the North Dakota C&D prior to my investing with him and ProTrust Management. A true and correct copy of the North Dakota C&D is attached hereto as Exhibit 5.

Executed this 23 day of January, 2009.

T. MICHAEL ELROD