# DECLARATION OF STEVEN M. WIELAND


FILED
U.S. DISTRICT COURT
MIDDLE DISTRICT OF TENN.

JAN 2 8 2009

BY_____
DEPUTY CLERK

I, **STEVEN M. WIELAND**, declare pursuant to the provisions of 28 U.S.C § 1746:

1. I have direct knowledge of the matters set forth in this declaration (the "Declaration")

2. I am 59 years old and currently reside in Davidson, North Carolina

3. I previously served as a fighter pilot in the U.S. Air Force and thereafter was employed as a commercial airline pilot. I am currently on long-term disability.

4. In 2005, I was first introduced to Gordon Grigg through a mutual acquaintance. Mr. Grigg explained that he was a financial planner, and, over the next several months, Mr. Grigg and I discussed several possible investment opportunities.

5. I also reviewed Mr. Grigg's website during this time, located at: http://www.protrustmanagement.com/ (the "ProTrust Website"). The ProTrust Website also identified Mr. Grigg's corporate entity ProTrust Management, Inc. ("ProTrust Management").

6. Prior to investing, I reviewed the ProTrust Website, which stated that, among other things, Mr. Grigg had "helped thousands of individuals and corporations achieve their financial goals." The ProTrust Website further stated Mr. Grigg would bring his "20 years of investment experience and share with you the winning strategies for creating wealth regardless of your income," and that "[i]f your finances are in trouble or you are unable to understand your current financial picture, we can get started immediately on your path to financial freedom." A true and correct copy of the ProTrust Website as it currently exists is attached hereto as Exhibit 1.

7. Based upon the investment opportunities that Mr. Grigg discussed with me as well as his professional investment experience as described on the ProTrust Website, I determined to invest with Mr. Grigg and ProTrust Management

8. In August 2007, at Mr. Grigg's instruction, I opened a brokerage account at TD Ameritrade, Inc. (the "TD Ameritrade Account"). Further to Mr. Grigg's instruction, I transferred my existing securities accounts, including a retail brokerage account and an IRA, that were valued in excess of $240,000, into the TD Ameritrade Account.

9. Mr. Grigg also instructed that I execute a power of attorney, providing him with online discretionary trading authority over the TD Ameritrade Account, which I did. Mr. Grigg thereafter utilized this discretionary trading authority to liquidate my existing equity securities holdings and purchase equity securities of his choosing.

10    Mr. Grigg also represented to me that he and ProTrust Management had access to what he referred to as "Private Placements." Mr. Grigg represented that to take advantage of these Private Placements, my investment funds would be combined with other investors' funds. Mr. Grigg further explained that these Private Placements were investment opportunities that smaller, individual investors such as myself would typically not have access to, but that Mr. Grigg and ProTrust Management, by combining my investment proceeds with other similar investors would be able to invest in on our behalf.

11    Based on Mr. Grigg's representations, from August 2007 through January 2008, I made four separate wire transfers to Mr. Grigg and ProTrust Management totaling $237,000. These funds were to be invested in Private Placements as he had described it to me.

12    I thereafter began receiving account statements on the letterhead of "ProTrust Management Group, Inc." that represented I was invested in two "Private Placements." The first such Private Placement was identified as Kohlberg Kravis Roberts for $80,000 purchased on 8/28/2007 and maturing on 4/30/2009 at 14% interest.

13    Later statements reflected a $100,000 "Jumbo Corporate Debenture" with an 8.15% fixed annual return that was purchased on August 15, 2007 with a maturity date of December 22, 2008. Additional funds were placed in the Private Placement of the "Kohlberg Kravis Roberts" investment product to total $132,000. The periodic account statements that I received identified these investment products and also provided an accrued income identification. A true and correct copy of such an account statement, dated December 2, 2008 (the "Account Statement"), is attached hereto as Exhibit 2.

14    The Account Statement also identified equity securities holdings in the TD Ameritrade Account controlled by Mr. Grigg and specifically represented that I owned 1,000 shares of an equity security identified as "EMC Corp.," with a cost basis of $19,699 and 55,500 shares of an equity security identified as "Freddie Mae," with a cost basis of $90,382.

15    In mid-December 2008, shortly before the Jumbo Corporate Debenture Private Placement identified on the Account Statement was to become due, Mr. Grigg sent correspondence to me on ProTrust Management Group, LLC letterhead, with a ProTrust Management Group, Inc. LLC signature block, discussing a new investment opportunity with me involving the federal government's Troubled Asset Recovery Program (the "TARP Correspondence").

16    Within the TARP Correspondence, Mr. Grigg and ProTrust Management indicated that they had access to debt guaranteed by the federal government. Mr. Grigg and ProTrust Management specifically stated within the TARP Correspondence that:

**ProTrust Management has been a very small participant in a partnership that is headed up by Berkshire Hathaway and Kohlberg Kravis and Roberts or KKR. Via the partnership, ProTrust has purchased over 8 million dollars worth of banking debt and commercial bank paper over the last 5 years with interest rates from 7.5% to 14%. ProTrust was offered to participate in the**

latest offerings with **Morgan Stanley and Goldman Sacks [sic] through investments and loans. The result is: I agreed with the partnerships and committed to over $5 million dollars of commercial paper offering 12.5% in government guaranteed commercial paper and bank debt. I have contributed all of your private placement account value into the TARP guaranteed fund paying your account 12% for the term of the paper.... This is an amazing opportunity as we now have a US government guaranteed 12.5% bank debt. If you do not want to participate in the 12.5% government guaranteed fund please send me the enclosed liquidation form....**

A true and correct copy of the TARP Correspondence is attached hereto as Exhibit 3.

17. Mr. Grigg also provided me with a copy of what he referred to as the "note" that he stated was the evidence of the guaranteed debt identified within the TARP Correspondence. The document that Mr. Grigg provided me that he referred to as the "note" appeared to be an enclosure letter from an entity identified as "Morgan Stanley Bancorp" referencing a series of senior subordinated notes (the "Morgan Stanley Bancorp Correspondence"). The Morgan Stanley Bancorp Correspondence also identified a "Private CUSIP Number 46261Q ABJ." A true and correct copy of the Morgan Stanley Bancorp Correspondence is attached hereto as Exhibit 4.

18. After reading the TARP Correspondence and the Morgan Stanley Bancorp Correspondence, I became suspicious of the representations that Mr. Grigg was making to me concerning my investments. I thereafter contacted Morgan Stanley & Co., Inc. ("Morgan Stanley") and Goldman, Sachs & Co. ("Goldman Sachs"). Representatives of Morgan Stanley informed me that they had no knowledge of any relationships or dealings with Mr. Grigg or ProTrust Management and that there was no such entity as "Morgan Stanley Bancorp" and no such CUSIP Number as 46261Q ABJ. Representatives of Goldman Sachs informed me that they had no knowledge of any relationships or dealings with Mr. Grigg or ProTrust.

19. I thereafter demanded that Mr. Grigg provide me with documentation establishing the existence of the Private Placements the Account Statement identified that I was invested in.

20. Mr. Grigg and ProTrust have been unable to provide any documentation to me establishing the actual existence of the Private Placement investments identified on the Account Statement.

21. I thereafter revoked Mr. Grigg's control over the TD Ameritrade Account and demanded that Mr. Grigg and ProTrust Management liquidate my Private Placements and return all moneys to me immediately.

22. Mr. Grigg and ProTrust Management initially represented that they would liquidate my holdings and return all moneys to me by January 5, 2009, which did not occur.

Case 3:09-cv-00087    Document 14    Filed 01/28/09    Page 3 of 4 PageID #: 192

23. Mr. Grigg and ProTrust Management thereafter represented that they would wire funds to me via my attorney for the first investment on January 15, 2009 that matured on December 22, 2008 and in return I was to sign a release to him and his company. The second investment funds were to be wired on January 25, 2009 with a second release for that investment to be signed and forwarded to him.

24. The funds that were to be wired to me on the January 15, 2009 did not occur. On January 20, 2009, Mr. Grigg and ProTrust Management wire transferred approximately $9,000 to my benefit.

25. To date I have delivered approximately $237,000 in cash to Mr. Grigg and ProTrust Management to invest on my behalf. Following repeated requests on my part, I have received approximately $9,000 of my funds in return.

26. Mr. Grigg further represented to me that any involvement on my part with the U.S. Securities and Exchange Commission would potentially result in losses for me as opposed to a return of my investment, and that in the event I made any false filings or slanderous remarks he would take legal action against me.

27. In further researching Mr. Grigg, I located a copy of an administrative cease-and-desist order entered against him and ProTrust Management on June 28, 2006 by the State of North Dakota Securities Department (the "North Dakota C&D"). The North Dakota C&D found that Mr. Grigg and ProTrust Management violated the registration and antifraud provisions of North Dakota law and ordered them to pay restitution and a civil penalty of $570,000. Mr. Grigg did not inform me of the existence of the North Dakota C&D prior to my investing with him and ProTrust Management. A true and correct copy of the North Dakota C&D is attached hereto as Exhibit 5.

28. I declare under penalty of perjury that the foregoing is true and correct.

Executed this 23 day of January, 2009

STEVEN M. WIELAND